**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-03-00717-001-TUC-DCB (JR) |
| Plaintiff, | **ORDER** |
| v. | |
| Leonel Ernesto Villasenor, | |
| Defendant. | |

On October 14, 2022, the Court denied Defendant's Amended Motion for Relief under 18 U.S.C. § 3582(c)(1)(B) because the First Step Act (FSA) did not expressly provide authority for a court to modify a term of imprisonment based on sentencing enhancements for career offenders. (Order (Doc. 240) at 2.) Likewise, relief is denied pursuant to 18 U.S.C. 3582(c)(2) because Defendant's career offender status sets the offense level, which is 34, 4B1.1(b)(B) (career-offender status combined with statutory maximum of twenty-five years or more yields base offense level of thirty-four), and precludes any advantage that may have flowed to him by the general reductions in 2014 of base offense levels for most drug-trafficking crimes, including marijuana.

Due to recent developments in the law, the Court called for supplemental briefing of Defendant's claim, pursuant to 18 U.S.C. § 3582(c)(1)(A), that the FSA allows his 360-month (30 years) career offender sentence to be revisited because one of his two prior felony convictions no longer qualifies for a career offender enhancement under U.S.S.G. § 4B1.1.

1    Defendant submits that without the career offender designation, the applicable
2    sentencing range would have been 110 to 137 months. If the present guidelines were used,
3    the sentencing range would be 92 to 115 months. He asks the Court to find that this
4    sentencing disparity is an extraordinary and compelling reason to grant compassionate
5    relief under 3582(c)(1)(A) by resentencing him to time served, which is approximately 19
6    years (228 months).

7                 Motion for Compassionate Release: 18 U.S.C. § 3582(c)(1)(A)

8    The Court denies the Amended Motion for Relief Under 18 U.S.C. § 3582(c)(1)(A).
9    (Doc. 231.) "[A] federal court 'may not modify a term of imprisonment once it has been
10   imposed.'" *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (quoting 18 U.S.C.
11   § 3582(c)). Congress created a limited exception to the rule of finality, pursuant to the
12   Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837. Congress
13   intended the compassionate release provisions, 18 U.S.C. 3582(c)(1), to be a "safety valve"
14   to reduce a sentence in the "unusual case in which the defendant's circumstances are so
15   changed, such as by terminal illness, that it would be inequitable to continue the
16   confinement of the prisoner," Pub. L. No. 98-225 at 121 (1983), and to respond to changes
17   in the guidelines, *id.* (citing (18 U.S.C. § 3582(c)(2)).   The compassionate release
18   provisions warrant a sentence reduction when "extraordinary and compelling reasons"
19   exist, 18 U.S.C. § 3582(c)(1)(A)(i), or if the defendant is at least 70 years in age, has served
20   at least 30 years in prison for the offense of conviction, and the Director determines the
21   defendant is not a danger to the safety of any other person or the community, 18 U.S.C. §
22   3582(c)(1)(A)(ii), and allows modification of a term of imprisonment to the extent
23   otherwise expressly permitted by statue or Fed. R. Crim.P Rule 35. Compassionate relief
24   is a "narrow" remedy because compassionate relief derogates from the important principle
25   of finality. *United States v. Wright*, 46 F.4th 938, 945 (2022) (citing *Freeman v. United
26   States*, 564 U.S. 522, 526 (2011)).

27   The FSA of 2018 expanded this relief by allowing a defendant to file a motion for
28   compassionate relief directly with the Court, after fully exhausting all administrative

avenues. Previously, compassionate release was only available by motion from the Director of the Bureau of Prisons (BOP) and a finding by the Court that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A), pursuant to U.S.S.G. § 1B1.13, which provides four "Extraordinary and Compelling Reasons," including medical condition of the defendant, age, and family circumstances. The policy also allows for a catch-all provision.

In the Ninth Circuit, pursuant to *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021), the Sentencing Commission's policy statements for BOP compassionate release motions, U.S.S.G. § 1B1.13, may inform a district court's discretion for § 3582(c)(1)(A) motions by defendants, but they are not binding.

"In *Concepcion v. United States*, the Supreme Court recently stated that '[i]t is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained.' —— U.S. ——, 142 S. Ct. 2389, 2396, 213 L.Ed.2d 731 (2022)." *United States v. Chen,* 48 F.4th 1092, 1095 (9th Cir. 2022). In *Chen,* the Ninth Circuit applied *Concepcion* in the context of a motion for compassionate release to conclude it was error to not consider judicial changes to sentencing law, including non-retroactive changes. In the Ninth Circuit, what constitutes extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) lies squarely within the district court's discretion. *Id.* at 1096. The power to grant compassionate release "is discretionary, not mandatory." *Wright*, 46 F.4th at 945.

In *Chen,* espousing on the Supreme Court's finding in *Concepcion* that a district court's discretion is limited only by Congress or the Constitution, the court held as follows:

> With regard to § 3582(c)(1)(A), Congress has only twice directly addressed what can be considered "extraordinary and compelling." First, the definition of extraordinary and compelling is bound by any applicable policy statements from the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A); 28 U.S.C. § 994(t). Second, in 28 U.S.C. § 994(t), Congress explained that '[r]ehabilitation ... alone' cannot be extraordinary and compelling.

1    *Chen,* 48 F.4th at 1096, *see also Concepcion*, 142 S. Ct. at 2394 (noting FSA limitations in

2    § 404(c) precluding FSA motion if the movant's sentence was already reduced under the

3    FSA or if the court considered and rejected a FSA motion).

4       After *Chen,* this Court follows *Keller* when reviewing a motion for compassionate

5    release filed by a defendant under § 3582(c)(1)(A)(i). First, the Court confirms that the

6    administrative exhaustion requirements have been met. *Keller*, 2 F.4th at 1283. The Court

7    then considers: 1) whether "extraordinary and compelling reasons" warrant a sentence

8    reduction or release, and 2) "the factors set forth in section 3553(a) to the extent that they

9    are applicable." *Id.* at 1283-84.[1] Even if the Court finds extraordinary and compelling

10    reasons to warrant compassionate relief, it may still be denied if defendant fails to satisfy

11    the sentencing factors in section 3553(a) to warrant a reduced sentence. *Wright,* 46 F.4th at

12    945. Motions brought under § 3582(c)(1)(A)(i) require the Court to perform a sequential

13    inquiry before it grants compassionate release, but a district court that properly denies

14    compassionate release based on § 3553 grounds need not evaluate each step. *Keller,* 2 F.4th

15    at 1284. Put another way, "'[A] district court that properly denies compassionate release

16    need not evaluate each step' in the 'sequential step-by-step analysis required by 18 U.S.C.

17    § 3582(c)(1)(A)" because the structure of the compassionate release statute, which treats

18    its requirements as conjunctive, dictates that a court may deny compassionate release at

19    any stage of the § 3582(c)(1)(A) pipeline. *Wright*, 46 F.4th at 947 (citing *Keller*, 2 F.4th at

20    1284).

21       The Court exercises its discretion to consider compassionate release motions on an

22    individualized basis, *United States v. Brooker*, 976 F.3d 228, 230 (2nd Cir. 2020), and

23    weighs the § 3553(a) sentencing factors to decide whether the requested sentence reduction

---

[1] To be clear, three predicates exist for determining whether a sentence reduction is warranted but evaluating whether it would be "consistent with applicable policy statements issued by the Sentencing Commission" is inapplicable to preclude motions brought by defendants, instead of the BOP, under the FSA. *Wright*, 46 F.4th at 945 (citing *Keller*, 2 F.4th at 1284) (citing 18 U.S.C. § 3582(c)(1)(A)). Policy statements by the Sentencing Commission may inform the district court's discretion for § 3582(c)(1)(A) motions by defendants. *Aruda*, 993 F.3d at 802.

1  is warranted "under the particular circumstances of the case." *United States v. Jones*, 980

2  F.3d 1098, 1108 (6th Cir. 2020) (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

3                    <u>Petitioner's Case for Compassionate Release</u>

4         At trial, Defendant was convicted of conspiracy to possess with intent to distribute

5  more than 100 kilograms, but less than 1,000 kilograms grams of marijuana, in violation

6  of 21 U.S.C. 846, 841(a)(1). He was acquitted on a charge of attempt to possess with intent

7  to distribute. The jury found the weight of the marijuana to be 843 pounds (382.4

8  kilograms). The presentence report reflected statutory penalties of five to 40 years

9  imprisonment, a guideline range of 262 to 327 months imprisonment, and a recommended

10 sentence of 294 months. The Court sentenced the Defendant within the statutory limits to

11 a prison term of 360 months (30 years) and four years supervised release. (Judgment and

12 Commitment (J&C) (Doc. 166)).

13        The presentence report reflects the offense conduct, as follows. Agents observed the

14 Defendant on March 5, 2003, at Home Depot buying rolls of contact paper, a practice used

15 by narcotic smugglers to package drugs. He got into a vehicle targeted in a prior narcotic

16 smuggling investigation and was followed by agents to a business where he picked up

17 another individual, coconspirator Pesqueira-Quihue. The two traveled to a secluded

18 warehouse, got out, and walked to a garage door. Defendant messed with the padlock on

19 the door but did not open it. He read a note on the door and made a few calls on his cellular

20 phone. He seemed to notice the unusual activity at the warehouse, dropped the contact

21 paper, and started to walk back to his truck. Defendant was arrested before he could leave

22 the area. Upon questioning, Defendant denied having any knowledge regarding ownership

23 of the warehouse and denied having a key to it. He said he picked up the contact paper for

24 a friend but didn't know his friend's name. When the warehouse was opened, agents

25 confiscated 52 bales of marijuana, totaling 843 pounds (382.4 kilograms), and

26 paraphernalia used for packaging and selling marijuana.

27        The Court sentenced the Defendant as a career offender based on two prior

28 controlled substance felony convictions: 1) a 1996 attempt to unlawfully possess a narcotic

drug for sale (Cocaine) in violation of A.R.S. §§ 13-1001, 3408(A)(2) and (B)(2) and 2) a 1997 unlawful possession of marijuana for sale in violation of A.R.S. § 13-1405(A)(2), (B)(6) and (C). The Defendant was 26 years old at the time of the offense and had a robust criminal history, including the two-predicate career-offender felonies, which were committed when he was 18 and 19 years old, and a slew of misdemeanor offenses that, while misdemeanors, included serious charges such as assault and carrying a concealed weapon. His career-offender status, combined with the statutory maximum of not greater than 40 years, resulted in a base offense level of thirty-four and a criminal history category VI.

The Defendant challenges his career offender status, pursuant to U.S.S.G.§ 4B1.1, based on the 1996 state felony conviction for attempt to unlawfully possess a narcotic drug for sale (Cocaine) because it no longer meets the definition of a controlled substance offense. A.R.S. §§ 13-3408(A)(2) and (B)(2).

The career-offender designation requires a defendant to be at least 18 years old at the time of the offense of conviction, U.S.S.G. § 4B1.1(a)(1), the offense of conviction must be a felony and either a "crime of violence" or a "controlled substance offense," *id.* at (a)(2), and the defendant must have at least two prior felony convictions for either a "crime of violence" or a "controlled substance offense, *id.* at (a)(3). The Defendant submits that the term "controlled substance" refers to a substance listed in the federal Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.* Here, the sole issue is whether the felony conviction under Arizona law for unlawfully possessing a narcotic drug for sale (Cocaine) in violation of A.R.S. §§ 13-1001, 3408(A)(2) and (B)(2) is a controlled substance.

Simply put, Defendant's argument is that "[a] state statute does not qualify as a "controlled substance offense" if it punishes conduct involving a drug that is not defined by federal law as a controlled substance under 21 U.S.C. § 802(6)." (Amended Motion (Doc. 231) at 9 (citing *United States v. Martinez-Lopez*, 864 F.3d 1034, 1037–38 (9th Cir.

2017)[2] (citing *Mielewczyk v. Holder*, 575 F.3d 992, 995 (9th Cir. 2009)[3]). Under Arizona law, the term "narcotic drug," includes two substances that are not listed in the federal CSA: benzylfentanyl and thenylfenatnyl. *Compare* 21 U.S.C. § 812 or 21 C.F.R. §§ 1308.11-1308.15 *with* Ariz. Rev. Stat. § § 13- 3408 and 3401(20).

According to the Defendant, Arizona's definition of the term "narcotic drug" is overbroad with respect to the term "controlled substance" used in the Guidelines, and Arizona law does not require jury unanimity about the illegal substance involved in a violation of § 13-3408. Relying on a string of unpublished decisions, *MadridFanfan v. Sessions*, 729 F. App'x 621, 622 (9th Cir. 2018) (citing *State v. Prescott*, No. 1 CA-CR 15-0188, 2016 Ariz. App. Unpub. LEXIS 179, at *3, 2016 WL 611656 (Feb. 16, 2016); *State v. Castorina*, No. 1 CA-CR 08- 0816, 2010 Ariz. App. Unpub. LEXIS 588, at *4, 2010 WL 2450117 (Jun. 17, 2010)), the Defendant argues that the Arizona statute is, therefore, not divisible either expressly or as parsed out by the jury. "Thus, a conviction under § 13-3408 is not a "controlled substance offense." (Amended Motion (Doc. 231) at 9-10 (relying on *United States v. Sanchez-Fernandez*, 669 F. App'x 415, 415 (9th Cir. 2016)).

The issue before the Court is "whether a state drug statute sweeps more broadly than its federal counterpart because the former includes a particular [] substance that the latter does not." *United States v. Ruth*, 966 F.3d 642, 643 (7th Cir. 2020). Describing this issue as "becoming an all-too-familiar subject," the Seventh Circuit noted the circuit split on the question. It noted the bulk of the circuits, the Second, Fifth, Eighth, and Ninth Circuits have concluded that "controlled substance" in U.S.S.G. § 4B1.2(b) refers to a federal definition, which necessarily correlates to those substances listed in the CSA. Noting these circuits have considered different provisions of the Guidelines and different terms, and they all applied the same basic reasoning: the so-called Jerome presumption. The general rule

---

[2] Martinez-Lopez challenged an enhancement imposed under U.S.S.G. § 2L1.2(b)(1)(A)(i) when a defendant has been previously deported following a conviction "for a felony ... drug trafficking offense for which the sentence imposed exceeded 13 months.")
[3] Mielewczyk challenged an immigration deportation as an alien "convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), which is the CSA.

being that "the application of a federal law does not depend on state law unless Congress plainly indicates otherwise." *United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018) (citing *Jerome v. United States*, 318 U.S. 101, 104, (1943)). Federal law is the interpretive anchor for defining a "controlled substance offense," *id.*, and consistent with the principles underlying the *Taylor*[4] categorical approach, *Ruth*, 966 F.3d at 653.

The Seventh Circuit in *Ruth*, however, followed the Sixth and Eleventh Circuits, relying on unpublished opinions, and squarely rejected the notion of incorporating the federal CSA to define "controlled substance" into the career-offender guideline, which does not in any way refer to the CSA. *Ruth*, 966 F.3d at 653.  It reasoned that the Sentencing Commission clearly knows how to cross-reference federal statutory definitions when it wants to. "Indeed, in the very same definitional section for the career-offender guideline, the Commission defined "crime of violence" to incorporate the definition of firearm from 26 U.S.C. § 5845(a) and "explosive material as defined in 18 U.S.C. § 841(c)." *Id.* at 651–52 (citing U.S.S.G. § 4B1.2(a)(2)).

This Court is not free to pick between circuit splits. In *United States v. Leal-Vega*, 680 F.3d 1160, 1166 (9th Cir. 2012), the Ninth Circuit held that the meaning of "drug trafficking offense" under U.S.S.G. § 2L1.2 "should not 'depend on the definition adopted by the State of conviction'" because it would be inconsistent with the principles underlying the *Taylor* categorical approach. Leal-Vega challenged a prior conviction under a California statute as constituting a "drug trafficking offense" under U.S.S.G. § 2L1.2 for a sixteen-level sentencing enhancement. The court found the California conviction did not qualify categorically as a "drug trafficking offense" for the purposes of the Sentencing Guideline because it criminalized possession or purchase of certain substances that were not covered by the CSA, but held the conviction qualified as a "drug trafficking offense" under modified categorical approach. The court relied on prior rulings issued in the context of the immigration statute 8 U.S.C. § 1227(a) in spite of the distinction that it expressly applied to "any alien who at any time after admission has been convicted of a violation of

---

[4] *Taylor v. United States*, 495 U.S. 575 (1990).

(or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), which is the CSA. "In contrast, the pertinent language in the Sentencing Guidelines differs from that of 8 U.S.C. § 1227(a)(2)(B)(i) because the term "controlled substances" is not therein expressly linked to the CSA." *Leal-Vega*, 680 F.3d at 1164-1169.

*Leal-Vega* applies to Defendant's challenge to this Court's imposition of a career offender enhancement pursuant to US.SG 4B1.1 because "[t]he Guidelines' definition of 'controlled substance offense' is substantively identical to the definition of 'drug trafficking offense.'" *United States v. Walker*, 858 F.3d 196, 200 n.4, 201 (4th Cir. 2017). *Compare* U.S.S.G. § 4B1.2(b) ("[C]ontrolled substance offense means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.) *with* U.S.S.G. § 2L1.2 ("Drug trafficking offense" means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.")

*Leal-Vega* remains good law in the Ninth Circuit, albeit it has most recently been described as "hopelessly confused." *United States v. House*, 31 F.4th 745, 760-65 (9th Cir. 2022), Circuit Judge Christen, concurring in per curiam opinion. While confusion may reign, generally, the road is clear in this case. "'There is no categorical match between the federal crime and the Arizona crimes because of a minor but critical difference in the types of drugs each statute prohibits.'" *Romero-Millan v. Garland*, 46 F.4th 1032, 1036–37 (9th Cir. 2022) (quoting *Romero-Millan v. Barr*, 958 F.3d 844, 848 n.1 (9th Cir. 2020)). "Specifically, '[t]he Arizona statute lists benzylfentanyl and thenylfentanyl as prohibited narcotic drugs, A.R.S. § 13-3401(20)(n) & (m), while the federal statute does not.'" *Id.*

1   Defendant's case turns on whether A.R.S. § 13-3408 is divisible as to drug type." *Romero-*
2   *Millan v. Barr*, 958 F.3d at 848; *see also* (Amend. Motion (Doc. 231) at 10 (arguing that
3   Arizona statute is not divisible because state law does not require jury unanimity about the
4   illegal substance involved).

5          The Court rejects Defendant's argument that Arizona's dangerous drug offense
6   statute, A.R.S. § 13-3408 is not divisible.  The question has been answered in the context
7   of 8 U.S.C. § 1227(a)(2)(B)(i), which renders removable "[a]ny alien who at any time after
8   admission has been convicted of a violation of ... any law or regulation of a State ... relating
9   to a controlled substance (as defined in section 802 of Title 21)." *Romero-Millan v.*
10  *Garland*, 46 F.4th at 1040. The Court notes this statute expressly incorporates the CSA,
11  and that in the Ninth Circuit this is a distinction that does not matter when making an
12  overbreadth determination.

13         In two immigration cases, the Ninth Circuit Court of Appeals certified three state-
14  law questions to the Supreme Court of Arizona, which accepted certification and issued a
15  written opinion answering one question but finding the others related to the divisibility of
16  ARS 13- 3408 and were not state law questions. The Arizona Supreme Court's answer to
17  the first certified question, however, resolved the issue because it found contrary to the
18  Defendant's assertion, here, that jury unanimity is required for a dangerous drug conviction
19  under Arizona law.

20         In short: "The Supreme Court of Arizona, in answering the third certified question,
21  held that jury unanimity regarding the identity of a specific drug is required for a conviction
22  under A.R.S. § 13-3408 for possession of a drug for sale. *Romero-Millan* [*v. Barr*], 507
23  P.3d [999,] [] 1001–04 [(Ariz. 2022)]. The court found particularly instructive the fact that
24  "'Arizona's drug-specific penalties illustrate that drug identity is an element of a narcotic
25  drug offense" because "[t]he sentencing scheme for § 13-3408 provides different
26  punishments for different drugs depending on the particular threshold amount alleged by
27  the state.' Id. at 1003." *Romero-Millan*, 46 F.4th at 1043.

28

"Based on the Supreme Court of Arizona's answer, [the Ninth Circuit Court of Appeals held] that § 13-3408 is divisible as to drug type." *Id*. It was not error to apply the modified categorical approach to examine the underlying record of conviction to establish that the substance upon which the state conviction was based was cocaine, a substance on the federal list. *Id*. Accordingly, the Defendant's assertion that he would not be considered a career offender under *Sanchez-Fernandez* or any of the other unpublished decisions upon which he relies fails.

A.    Extraordinary and Compelling Reasons: 1) Sentencing Disparity; 2) Rehabilitation, and 3) Youth[5]

As explained above, the Defendant cannot escape his career offender status. Consequently, the injustice of the disparity is wholly related to the Court's decision to impose a sentence within the statutory limits of not less than 5 years or more than 40 years. The Court imposed a 30-year (360 month) sentence originally and, again, when it resentenced him post *Ameline,*[6] based on its understanding after *Booker*[7] that the Sentencing Guidelines are advisory.

When it resentenced the Defendant in 2006, the Court held that "had the Sentencing guidelines been advisory at the time of Defendant's sentencing, it [still] would not have imposed a materially different sentence than the one imposed on May 4, 2004." (Order ) (Doc. 202) at 1.) The Court found that the defendant "was convicted of conspiring to sell a significant quantity of drugs and his criminal history evidence[d] Defendant's progression towards committing more and more serious offenses." *Id.* at 8. The Court concluded that the defendant was a career offender, with a relevant guideline range of 262 to 327 months. The Court sentenced, and and resentenced, the Defendant to 360 months (30 years) term of imprisonment.

---

[5] Defendant's BOP health records reflect diagnoses, as follows: Congenital pes planus (flat feet), an unspecified disorder of refraction and accommodation (an eye condition), Anisometropia amblyopia (unequal focus between the two eyes causing chronic blur) for which he was prescribed glasses, and Antisocial Personality Disorder. He does not assert any health condition that singularly or in combination should be considered an extraordinary and compelling reason for compassionate release.

[6] *United States v. Ameline,* 409 F.3d 1073 (9th Cir. 2005).

[7] *United States v. Booker,* 543 U.S. 220 (2005).

The Court imposed the 30-year sentence, within the statutory minimum/maximum provisions for conspiracy to possess with intent to distribute more than a 100 but less than 1000 kilograms (843 pounds; 382.4 kilograms) of marijuana in violation of 21 U.S.C. § § 846, 841(a)(1) and (b)(1)(B). These statutory sentencing provisions remain the same today as they were in 2004 and 2006. As a career offender, the Defendant's offense level remains 34, with a Criminal History Category VI. U.S.G.G. § 4B1.1(b)(B). Likewise, the "advisory" guideline sentencing range remains 262 to 327 months. The Court finds that Defendant's failed argument of a sentencing disparity based on changes in sentencing law cuts against a finding that extraordinary and compelling reasons warrant compassionate release.

The Court considers all the Defendant's reasons, including the other reasons, posited for finding an extraordinary and compelling reason to grant compassionate release in combination, such as: he has taken numerous educational courses while incarcerated; he has given up his gang affiliations; he has maintained his barber's license and would have a job and family support if he were released, and he was very young when he committed the offense of conviction and is now more mature. His ability to have a job and family support if released are relevant only if the Court were considering Defendant's release but are not extraordinary or compelling reasons to grant compassionate release.

He was young when he committed the offense; he was 26 years old. The Court recognizes that the First Step Act of 2018 amended various provisions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration. Cong. Research Serv., R45558, "The First Step Act of 2018: An Overview (2019)." The First Step Act also defined the term "youth," as follows: meaning a prisoner "who was 21 years of age or younger at the time of the commission of the criminal offense."[8] The Court recognizes that youthful chronological age has hallmark features of immaturity,

---

[8] Section 608 of the First Step Act provides for two "Pilot Programs" including one program for mentoring youth in prison. For purposes of that program, the First Step Act defines "youth" as a "prisoner ... who was 21 years of age or younger at the time of the commission or alleged commission of the criminal offense..." First Step Act of 2018, Pub. L. No. 115-391, § 608(c), 132 Stat. 5194, 5220 (Dec. 21, 2018).

impetuousness, and failure to appreciate risks and consequences that may affect an offender's culpability and should lessen the severity of a sentence. *See, e.g., Roper v. Simmons*, 543 U.S. 551, 569–70 (2005) (declaring capital punishment cruel and unusual as to juveniles/youths); *Graham v. Fla*., 560 U.S. 48, 82 (2010) (finding life without parole was cruel and unusual punishment for non-homicide crimes committed by juveniles/youths).

The Court notes that the Defendant was not a juvenile, not even close. When the Court imposed the 30-year sentence, he was 26-years old. In 2006, when the Court resentenced him, it considered his age as a personal characteristic. *See* (D's Sentencing Memorandum) (Doc. 200) at 3-4) (pointing out that under advisory Guidelines and 18 U.S.C. §3661, the Court had discretion to consider all personal characteristics of a defendant, including age, and remining the Court that under 18 U.S.C. §3582, imprisonment is not an appropriate means of promoting correction and rehabilitation). The Court finds that taking advantage of educational opportunities afforded him in prison, even when combined with the natural tendency to mature with age, is not an extraordinary and compelling reason to grant release.

By his own admission in 2012, eight years into his sentence, the Defendant was a current and active member of a gang. (Supp. Resp., Ex. B (Doc. 246) at 17.) His prison disciplinary record reflects multiple infractions in 2017 for refusing work assignments, (Resp., App. A (Doc. 236) at 19-21), and a grievance remark by him in 2017 when he confined in a secured housing unit that he "needed to change his life and drop out of gangs," (Amend. Motion, Ex. D (Doc. 231) at 32). The Court finds it likely the Defendant continued his gang involvement through 2017. His prison record during his early years of confinement do not support his assertions of good conduct; he was involved in several sanctioned incidents including fighting, drinking intoxicants, and possessing prohibited items. (Resp., App. A (Doc. 236) at 21-23.)

Without the advantage of a sentence disparity due to a change in sentencing law that arguably reflects an unjust sentence, the Defendant is left with the change in the general

mood of the country to impose more lenient sentences as an extraordinary and compelling reason for compassionate release. In combination with the other reasons he proposes are extraordinary and compelling, his motion is little more than a request that the Court reconsider the sentencing factors set out in 18 U.S.C. § 3553(a) because he has now served 20 years, grown up, and had the advantage of arguably rehabilitative opportunities during this period of confinement. As noted in *Chen,* Congress has only twice directly addressed what can be considered "extraordinary and compelling," including that the policy statements from the Sentencing Commissions shall not provide for rehabilitation of the defendant alone to be considered an extraordinary and compelling reason. *Chen*, 48 F.4th at 1096 (citing 28 U.S.C. § 994(t)), *see also* USSG § 1B1.13, comment (n.3) (same). The Court finds that there are no extraordinary and compelling reasons to grant compassionate release based on the passage of 20 years and the measures undertaken by the Defendant to take advantage of opportunities to rehabilitate himself during this time, even when combined with the change in the general mood of the country to impose more lenient sentences.

B.     18 U.S.C. § 3553(a) Sentencing Factors

The Court turns to the sentencing factors set out in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense and history and characteristics of the defendant. A just sentence accounts for the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to deter criminal conduct and protect the public from further crimes by the defendant, and provide needed educational or vocational training, medical care, or other correctional treatment. Other sentencing factors include: the kinds of sentences available; any sentencing guideline consideration and pertinent policy statements; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims.

When these factors were considered in 2004 and 2006, the Court imposed the 360-month sentence of incarceration because it "reflects the seriousness of the offense, affords

adequate deterrence to criminal conduct, and protects the public from further crimes of the defendant." (Order (Doc. 202) a 9.) In 2006, the Court resentenced Defendant to the same term of prison after considering the applicable guideline range of 262 to 327 months. None of this has changed.

The nature and circumstances of the offense and history and characteristics of the defendant remain the same, except the Defendant is now approximately 20-years older. The seriousness of the offense remains the same. The Defendant would have the Court find that he has received needed educational or vocational training, medical care, or other correctional treatment so that the 20 years of incarceration has been sufficient to deter him from committing other crimes. Therefore, further incarceration is not needed to protect the public from further crimes by the Defendant. Then, the Court could conclude that the 30-year sentence was not a just punishment and reduce it or release him. The Court finds to the contrary.

Simply taking advantage of various prison opportunities and getting older and more mature does not convince the Court that the Defendant is in fact deterred from further criminal activity. The Court compares the instant offense, which he committed at age 26, with the prior Arizona narcotic convictions that served as predicates for his status as career offender, which he committed when he was 18 and 19 years old.  The Defendant's criminal history reflects that as he aged, he in fact became more involved in criminal activity that was more serious. While he has taken advantage of educational opportunities during his incarceration, he remained involved with prison gangs until at least 2012 and probably until 2017, assuming he is no longer involved with them. His prison disciplinary record is not stellar, with some infractions occurring as recently as 2020. The Court finds that retaining the 30-year sentence, when all the sentencing factors essentially remain the same, promotes respect for the law.

C.      Conclusion

In addition to the threshold determination of exhaustion, three predicates exist for determining whether to grant a motion for compassionate release or a sentence reduction,

but one, evaluating whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission," does not apply to preclude motions brought by defendants under the First Step Act. 18 U.S.C. § 3582(c)(1)(A).

Here, the Government concedes that the Defendant meets the exhaustion requirement. 18 U.S.C. 3582(c)(2). This Court has only considered policy statements issued by the Sentencing Commission to inform its analysis where applicable. *Aruda*, 993 F.3d at 802. The Court finds that the Defendant presents no reasons, considered singularly or in combination, that are extraordinary or compelling. The Court, likewise, finds that the sentencing factors set out in 18 U.S.C. § 3553(a) reflect that the sentence of 360-months (30-years) is a just sentence. There is no basis to grant the Motion for Compassionate Release.

**Accordingly,**

**IT IS ORDERED** that the Motion to Reduce Sentence or for Early Release (Doc. 222) as amended by the Amended Motion to Reduce Sentence or for Early Release (Doc. 231) is DENIED.

Dated this 24th day of January, 2023.

Honorable David C. Bury
United States District Judge